DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | CASE NO. 1:07 CR 339 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | and ORDER |
| Mark D. Lay, ) | (Resolving Document 32) |
| ) | |
| Defendant. ) | |
| ) | |

I. Introduction

On June 14, 2007, the government filed a four count Indictment against Mark D. Lay ("Lay") relating to financial investments he made with Ohio Bureau of Workers' Compensation ("OBWC") funds. Lay filed a Motion to Dismiss, and later an Amended Motion to Dismiss, the Indictment in its entirety, which was opposed by the government. Lay replied to the government's opposition, and the Court held oral argument on the Amended Motion to Dismiss (Document 32). The transcript from the oral argument was prepared at the Court's request, and the parties were given leave to file post-hearing briefs by September 17, 2007.

Subsequent to the oral argument, the government filed a four count Superseding Indictment against Defendant. The Superseding Indictment charges that the Defendant violated the anti-fraud provision of the Investment Adviser's Act (15 U.S.C. §§ 80b-6 & 80b-17) in connection with his investment relationship with the OBWC, and that he engaged in conspiracy to commit mail and wire fraud, and committed mail fraud, in connection with the facts and circumstances involving that investment relationship. 18 U.S.C. §§ 2, 1341, 1343 & 1349.

After the government filed the Superseding Indictment, the Court issued an Order stating that it would consider the Amended Motion to Dismiss to apply to the Superseding Indictment, and granted leave to the parties to modify their submissions to the Court regarding the pending motion.  Both the Defendant and the government file post-hearing briefs (Documents 60 and 59, respectively).  Defendant replied to the government's post-hearing brief.

Defendant's Amended Motion to Dismiss is denied based on the Court's analysis, which follows:[1]

## II.  Standard of Review as to a Motion to Dismiss

Criminal Rule 12 (b) (3) (B) provides that a defendant may move to dismiss due to the failure of the indictment to state an offense.  *United States v. Chichy*, 1 F3d. 1501, 1504 n.3 (6th Cir. 1993), states that "[a]n indictment as drafted is presumed sufficient if it tracks statutory language, cites the elements of the crimes charged, and provides approximate dates and times."

The primary focus of the Defendant's motion is directed to the first count of the Superceding Indictment, attached as Appendix A, which charges as follows:

1. The allegations in paragraphs 1 through 46 of the General Allegations are realleged and incorporated by reference as though fully set forth herein.

2. As investment advisers registered with the SEC under the Investment Advisers Act of 1940, MDL its officers and employees, including LAY, owed fiduciary obligations of good faith, loyalty, and fair dealing to its clients, the OBWC, which entrusted the OBWC's money to MDL's management.  As a fiduciary, MDL and

---

[1] The Court's denial of Defendant's Amended Motion to Dismiss does not mean that the Defendant will not have the opportunity to make a motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure at the close of the government's case or at the close of all testimony.

2

       its respective officers and employees were required at all times to: (a) act in good faith and in the best interests of its clients, the OBWC; (b) make full and fair disclosure of all material facts being on the investment advisery relationship between MDL and its respective client, the OBWC; and (c) employ reasonable care to avoid misleading its client, the OBWC.

3.     In or about September 2003, through January 2005, in the Northern and Southern Districts of Ohio and elsewhere, the defendant MARK D. LAY, together with others known and unknown to the Grand Jury, including brokers and brokerages located in the Northern District of Ohio and elsewhere, unlawfully, willfully and knowingly did use and cause to be used the mails, wires and other means and instrumentalities of interstate and foreign commerce, directly and indirectly, to: <u>(a) employ devices, schemes, and artifices to defraud, the client, the OBWC and thereby the ADF; (b) engage in transactions, practices and courses of business which operated as a fraud and deceit upon, the client, the OBWC and thereby the ADF; and (c) engage in any act, practice and course of business which was fraudulent, deceptive and manipulative, to wit: exercising leverage in excess of 150% in the ADF, in violation of the PPM, and concealing and failing to disclose to the full extent his exercise of leverage in excess of 150%.</u>[2]

All in violation of Title 15, United States Code, §§ 80b-6 and 80b-17.

15 U.S.C. §§ 80b-6 and 80b-17 provide in pertinent part as follows:

Section 80b-6

It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly –

(1) <u>to employ any device, scheme, or artifice to defraud any client or prospective client;</u>

(2) <u>to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client;</u>

---

[2] Appendix A, Superseding Indictment, pp. 10-11. Emphasis added.

> (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction;
>
> (4) <u>to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative</u>. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.[3]
>
> Section 80b-17. Penalties
>
> Any person who willfully violates any provision of this subchapter, or any rule, regulation, or order promulgated by the Commission under authority thereof, shall, upon conviction, be fined not more than $10,000, imprisoned for not more than five years, or both.

The Defendant's motion to dismiss is discussed in greater detail below. Briefly, however, Lay contends in support of his motion that information and documents, outside of the information contained in the General Allegations and in Count 1, negate the Superseding Indictment's charges as to his relationship with the OBWC's investments in the Active Duration Fund ("ADF"). As stated in the Superseding Indictment, Lay's relationship with the OBWC began with his role as the investment adviser for the OBWC's Long Fund. At the same time that

---

[3] Emphasis added.

Lay was investment adviser to the OBWC for the Long Fund, Long Fund assets were invested by the OBWC in the ADF.  The ADF was established and managed by Lay.  In his motion to dismiss, Lay argues *inter alia* that notwithstanding his fiduciary investment adviser relationship with the OBWC with respect to the Long Fund, he had no client or fiduciary relationship with the OBWC regarding the OBWC's investment in the ADF, which came from Long Fund assets that were managed by Lay.  In support of this argument, he points to documents and information outside of the Superseding Indictment and argues factual conclusions regarding the effect of that evidence on the merits of the indictment's charges.  However, the Court's review of the Superseding Indictment for purposes of the Defendant's motion is limited to the information contained therein and based on the assumption that the factual allegations of the charges are true.  Based on those assumptions, if the allegations of the Superseding Indictment state an offense, then it is sufficient for purposes of surviving a motion to dismiss.

### III Superseding Indictment

The Superseding Indictment is attached as Appendix A to this Memorandum Opinion and Order.  However, a brief summary is helpful to the Court's analysis.

### General Allegations

The OBWC is a state agency which assists employers with expenses related to workplace injuries by providing medical and compensation benefits.  During the time relevant to the indictment, the OBWC's assets averaged 19 Billion Dollars and were controlled by its Chief Financial Officer.[4]

---

[4] Superseding Indictment, ¶ 1-2.

Lay founded MDL Capital Management ("MDL") in 1992, and served as its Chairman, co-CEO, principal shareholder, and Chief Investment Strategist. MDL was registered with the Securities and Exchange Commission ("SEC") as an investment adviser under the Investment Adviser's Act of 1940 ("the Act"), and provided investment adviser services.[5] SEC registered investment advisers, and their officers and directors, have a fiduciary duty to their clients, which includes acting in good faith in the best interest of the client, making full and fair disclosure of material facts regarding the investment relationship, and employing reasonable care to avoid misleading the client.[6]

In May 1998, the OBWC entered into an Investment Management Agreement with MDL. This agreement retained MDL to manage the OBWC's Long Fund, and established MDL as an investment adviser under the Act.[7] The OBWC allocated 355 Million Dollars to the Long Fund for management by MDL, and paid MDL almost $2 Million Dollars from 1998 to April 2005 in management fees for the Long Fund.[8]

In May 2002, Lay founded the MDL Active Duration Fund ("ADF") in Bermuda, which consisted primarily of government, corporate, and mortgage-backed securities. Lay and MDL's president were members of the ADF Board of Directors, and MDL was retained by the ADF

---

[5] Superseding Indictment, ¶ 3-5.

[6] Superseding Indictment, ¶ 7-8.

[7] Superseding Indictment, ¶ 9-10.

[8] Superseding Indictment, ¶ 13-14.

6

Board to serve as investment adviser to the ADF by an Investment Advisory Agreement.[9]

The terms and conditions of the ADF investment vehicle were outlined in a Private Placement Memorandum ("PPM"). The PPM contained a variety of information, including Lay's employment credentials, various statements regarding the use of leverage of the ADF's assets, and required investor clients payments to MDL for management of the ADF. The PPM was provided to potential investors in the ADF, including the OBWC.[10]

The employment credentials provided in the PPM for Lay - who was identified as one with primary responsibility for ADF investment decisions - were false, and concealed from the OBWC some of Lay's prior employers and the reason for his separation for those employers.[11] With respect to the use of leverage, the PPM provided that "up to 150% of the Funds assets, at the time of investment, may be leveraged . . ." This leverage limitation applied to all ADF assets, including United States Treasury Securities.[12] The OBWC paid MDL almost $1.8 Million Dollars in fees for its services related to the OBWC's investment in the ADF. This fee was paid in addition to the fee the OBWC paid MDL for its services related to the Long Fund.[13]

Lay successfully solicited the OBWC to invest in the ADF. In September 2003, the

---

[9] Superseding Indictment, ¶ 15-20.

[10] Superseding Indictment, ¶21. There are multiple versions of the PPM. The Indictment alleges that the version of the PPM provided to the OBWC was dated January 15, 2003. *See* Superseding Indictment, ¶ 22.

[11] Superseding Indictment, ¶ 21.

[12] Superseding Indictment, ¶ 22.

[13] Superseding Indictment, ¶ 21.

7

OBWC electronically transferred 100 Million Dollars from the Long Fund to the ADF. During time period relevant to the Superseding Indictment, the OBWC was the sole investor in the ADF.[14]

Lay directed the trading activity of the ADF during the period of time of OBWC's investment. He did so through the use of brokerage services both inside and outside the State of Ohio, and utilized the telephone, e-mail and mail services to carry out these transactions. Contrary to the terms of the PPM, Lay leveraged the ADF's assets - which consisted solely of OBWC funds - far in excess of the 150% leverage limitation contained in the PPM. Lay, MDL, and others provided reports to the OBWC regarding the ADF, but none of the reports reflected the amount of leverage exercised in the ADF. Lay's excess leverage of ADF assets violated his fiduciary role as an investment adviser to act in the best interest of his client, the OBWC.[15]

The OBWC met with Lay in mid-April 2004 because it was concerned about a $7 Million Dollar decline in the value of the ADF. At that meeting, Lay did not tell the OBWC that the ADF was leveraged well beyond the 150% limitation in the PPM, and concealed from the OBWC the ADF's actual losses, which were $32 Million Dollars.[16] The OBWC learned for the first time in May 2004 that the ADF had lost $32 Million Dollars when it received the April 2004 report. During the Spring 2004, Lay concealed and misrepresented to the OBWC the true nature of the leverage being exercised in the ADF, and did not reveal to the OBWC that the

---

[14] Superseding Indictment, ¶ 22-24.

[15] Superseding Indictment, ¶ 25-31.

[16] Superseding Indictment, ¶ 32-33.

ADF's losses were caused or magnified because he routinely exceed the 150% leverage limit.[17] Despite the ADF's losses, and because of Lay's failure to disclose the extent of leverage he exercised with ADF investments, the OBWC transferred another $100 Million Dollars from the Long Fund to the ADF in May 2004.[18]

After confronting Lay in May 2004 about the excessive leverage being utilized in the ADF, the ADF Board of Directors decided to amend the PPM to allow leverage in excess of 150% only for United States Treasury Securities, to notify the OBWC of the excess leverage that had been used, and to seek the OBWC's approval for continued use of leverage in excess of 150%. In August 2004, the ADF Board sent a letter to the OBWC purporting to notify the OBWC of Lay's past and intended use of leverage in excess of 150% and to secure its approval. However, the OBWC refused to permit excess leverage and refused to agree to the changes in the PPM.[19]

In mid-September 2004, the OBWC confronted Lay about the poor performance of the ADF. At that meeting, Lay admitted over-leveraging but falsely told the OBWC he had leveraged the ADF's assets approximately 900%, when he knew or should have known the ADF leverage exceeded 4,500%.[20]

By the time the OBWC learned that the ADF's losses were largely due to Lay's exercise

---

[17] Superseding Indictment, ¶ 35.

[18] Superseding Indictment, ¶ 36.

[19] Superseding Indictment, ¶ 37-39.

[20] Superseding Indictment, ¶ 40.

of leverage in violation of the PPM, most of its $200 Million Dollar investment in the ADF was lost. In an effort to avoid the total loss of its investment, the OBWC invested an additional $25 Million Dollars in the ADF on September 23, 2004. But shortly thereafter, the OBWC formally requested a redemption of its investment in the ADF.[21] In October 2004, Lay attempted to obtain further investments from the OBWC in the ADF, but the OBWC refused. As a result of Lay's fraud and deceit upon the OBWC regarding leverage of the ADF well in excess of 150%, the OBWC recovered only $9 Million Dollars from its $225 Million Dollar investment.[22]

### Count 1
### Investment Adviser Fraud: 15 U.S.C. §§ 80b-6 and 80b-17

As an investment adviser registered with the SEC, MDL and its officers and employees - including Lay - owed a fiduciary obligation to its client, the OBWC. This fiduciary obligation included acting in good faith and in the best interest of the OBWC, fully and fairly disclosing all material facts regarding the investment relationship between MDL and the OBWC, and employing reasonable care to avoid misleading the OBWC.[23]

From September 2003 through January 2005, Lay and others used the mails, wires and other means of interstate and foreign commerce to engage in a various schemes, transactions and acts to defraud, deceive and manipulate the OBWC, and thereby the ADF, by exercising leverage in excess of 150% in violation of the PPM, and concealing and failing to disclose the full extent

---

[21] Superseding Indictment, ¶ 41-43.

[22] Superseding Indictment, ¶ 45.

[23] Superseding Indictment, Count 1, ¶ 2.

10

of his exercise of leverage in excess of 150%.[24]

## Count 2
### Conspiracy to Commit or Attempt Mail and Wire Fraud
### 18 U.S.C. §§ 1341 & 1343; 18 U.S.C. § 1349

From September 2003 through January 2005, Lay knowingly and willfully conspired with others to defraud, deceive, and manipulate the OBWC regarding a material matter, and to obtain money and property by false and fraudulent means utilizing the postal service, commercial interstate carrier, and transmission by wire for the purpose defrauding, deceiving and manipulating the OBWC regarding the ADF, including the amount of leverage exercised, the impact of leverage on the ADF's value, and the management team and administration of the ADF.

In furtherance of the scheme to defraud, Lay: 1) caused false employment credentials to be included in the PPM which falsely stated his employment history in an effort to conceal certain past employers and his reasons for separation from these employers from the OBWC and others who relied on the PPM; 2) caused documents and information which resulted in execution of investment transactions which caused leverage of the ADF to exceed 150% to be delivered and transmitted interstate; 3) concealed the true nature and effect of leverage of the ADF in excess of 150% by failing to disclose the use of excess leverage and its effect on the OBWC's investment in the ADF; and 4) made false statements to others regarding the OBWC's knowledge of and consent to the use of excessive leveraging and regarding the OBWC's commitment to make additional investments in the ADF.

---

[24] Superseding Indictment, Count 1, ¶ 3.

In addition, Lay and others caused various trade confirmation statements to be mailed and delivered by commercial interstate carrier, and caused various communications to be transmited by wire in interstate and foreign commerce, in order to execute or attempt to execute the scheme to defraud, deceive, and manipulate the OBWC.

### Counts 3 and 4
### Mail Fraud: 18 U.S.C. §§ 1341 and 2

From September 2003 through January 2005, Lay, having devised a scheme to defraud the OBWC as to a material matter and to obtain money and property by false and fraudulent circumstances, used the postal service and commercial interstate carrier to mail and deliver certain trade confirmations related to the ADF.

### IV. Defendant's Amended Motion to Dismiss

In his motion to dismiss Count 1, Lay does not dispute that he is an investment adviser within the meaning of the Investment Advisers Act or that he is subject to 15 U.S.C. §80b-6. Rather, he contends that his actions with respect to OBWC's investments in the ADF fund do not fall within the prohibitions of Section 80b-6, and therefore do not constitute an offense. Lay offers several arguments in support of this position, which are as follows: 1) merely exercising excess leverage does not violate Section 80b-6; 2) the issue of leverage use is controlled by 15 U.S.C. 80a-18, not Section 80b-6[25]; 3) the OBWC was not his client with respect to ADF

---

[25] Defendant contends that Section 80a-18, not Section 80b-6, controls the use of leverage because Section 80a-18 deals specifically with the issue of leverage and Section 80b-6 does not. Therefore, principles of statutory construction require that specific statutory provisions regarding an issue to control over more general provisions. Lay also argues that the ADF is an exempt fund under Section 80a-18, and therefore not subject to the leverage limitations of that section.

12

investments[26]; 4) the ADF is a hedge fund, and hedge fund managers do not have a duty to disclose their use of leverage to hedge fund investors[27]; and 5) the PPM controlling the ADF investments contains guidelines, not limitations, regarding the use of leverage.[28]

In his motion to dismiss Counts 2, 3 and 4, Lay argues that the Superseding Indictment fails because it does not allege that money or property was obtained through a material misrepresentation or that the mail was used to execute the alleged leveraging scheme. Lay also argues that the trade confirmation statements for the ADF alleged by the government to support their mail and wire fraud counts represent lawful trades of a hedge fund and do not contain false information, therefore cannot support the allegations in the Superseding Indictment.

V. Analysis

In evaluating the Defendant's motion to dismiss, the Court must determine whether the allegations in the Superseding Indictment, which must be accepted as true, state an offense. An indictment is presumed sufficient if it tracks the statutory language, cites the elements of the crime charged, and provides approximate dates and times regarding the alleged actions. The Superseding Indictment -not factual conclusions about information and documents outside of the

---

[26] Defendant points to the Investment Advisory Agreement between MDL and the ADF in support of his argument that the ADF, not the OBWC, was MDL's client with respect to ADF investments.

[27] In support of this argument, Defendant cites the court's comments in *Goldstein v. SEC,* 451 F.3d 873, 875 (D.C. Cir. 2006)(". . . hedge funds typically remain secretive about their positions and strategies, even to their own investors.")

[28] Defendant cites the PPM at p. 3 ("The percentage included above is intended as a guideline and may be changed from time to time at the sole discretion of the Board of Directors.")

13

indictment - is the focus of the Court's review. Defendant's various arguments in support of his motion to dismiss are arguments that would require the Court to make factual conclusions about information and documents outside of the Superseding Indictment. However, these considerations are questions for the jury and a matter of proof at trial, and are not properly considered by the Court in a motion to dismiss.

A.      Count 1

Count 1 alleges a violation of 15 U.S.C. 80b-6. Sections 80b-6(1), (2) and (4) provide that:

*It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--*
*(1) to employ any device, scheme, or artifice to defraud any client or prospective client;*

*(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;*

. . . .

*(4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.*

While Defendant argues that the mere use of excess leverage and non-disclosure of the amount of leverage are not acts that fall within the prohibitions of Section 80b-6, he concedes that lies or misrepresentations about these matters <u>would</u> bring his conduct within the purview of Section 80b-6.[29] The Superseding Indictment does not merely allege that Lay used excess leverage or failed to disclose the amount of leverage used, but specifically alleges that Lay made false statements and misrepresentations to the OBWC regarding the amount of leverage and the

---

[29] Transcript of Motion to Dismiss Hearing, September 6, 2007, pp. 16-23, 32-35, 39-41.

14

effect of this leverage on the ADF.  Assuming the truth of the facts alleged in the Superseding Indictment, Defendant is an investment adviser within the meaning of the Investment Adviser's Act, he used the mails and interstate commerce to defraud the OBWC, engaged in acts which operated as a fraud and deceit upon the OBWC, and engaged in fraudulent, deceptive or manipulative acts in connection with his relationship with the OBWC and the OBWC's investments in the ADF.  The Superseding Indictment contains the statutory language of Section 80b-6, the elements of the crime charged, and contains approximate dates and times regarding the Defendant's actions which are the subject of the indictment.  These allegations, if proved at trial, are sufficient to support an offense under Section 80b-6.

It is a matter of proof for the government at trial to establish the truth of the allegations contained in the Superseding Indictment that Lay's actions in connection with his relationship with the OBWC and the ADF constitutes conduct prohibited by Section 80b-6.  Similarly, Defendant's arguments in support of his motion to dismiss Count 1 regarding his duty to disclose the use of leverage, the status of his client relationship with the OBWC, and the effect of the PPM on Lay's use of leverage are also a matter of proof for trial and do not support a motion to dismiss Count 1 of the Superseding Indictment.[30]

B.      Counts 2, 3 and 4

---

[30] The Superseding Indictment alleges that the Lay had a duty to disclose the use of leverage in the ADF, that the OBWC was Lay's client with respect to its investment in the ADF, that Lay's exercise of leverage violated the PPM and exacerbated the ADF's losses, and that Lay's failure to disclose and misrepresentations regarding his exercise of leverage caused losses to the OBWC that would not have occurred if the OBWC had been aware of the extent of leverage Lay exercised with respect to ADF investments.

15

Counts 2, 3 and 4 alleges a violation of 18 U.S.C. §§ 1341, 1343, 1349 and 2.  These sections provide that:

### § 1341. Frauds and swindles

*Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.*

### § 1343. Fraud by wire, radio, or television

*Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.*

### § 1349. Attempt and conspiracy

*Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.*

### § 2. Principals
*(a) Whoever commits an offense against the United States or aids, abets, counsels, commands,*

*induces or procures its commission, is punishable as a principal.*

*(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.*

Counts 2, 3 and 4 of the Superseding Indictment charge the Defendant with conspiracy, wire and mail fraud, and aiding and abetting, in violation of 18 U.S.C. §§ 1341, 1343, 1349 and 2. These counts allege that Defendant intentionally devised a scheme to defraud the OBWC as to a material matter and to obtain money and property by false and fraudulent means, and used the wires and mails to carry out the scheme. Counts 2, 3 and 4 describe the nature of the actions and document, transmissions and mailings which supports the allegation. The general allegations which are incorporated in Counts 2, 3 and 4 describe the Defendant's role in the alleged scheme and the effect of the scheme on the OBWC.

In support of his argument to dismiss Counts 2, 3 and 4, Defendant argues that there is no allegation that the OBWC parted with property by reason of a material misrepresentation, and that misrepresentations and non-disclosures regarding the use of leverage cannot form the basis for mail and wire fraud. Defendant also argues that the documents listed in the Superseding Indictment which supports the allegations are trade confirmation statements other documentation of lawful ADF transactions which contain no false information or misrepresentations which caused the OBWC to part with money or property.

The allegations of Counts 2, 3 and 4 contain the elements of the offenses of mail and wire fraud, identify the documents and transmissions which the government contends support the allegation of wire and mail fraud, and otherwise provide sufficient facts to apprise the Defendant of the facts and circumstances of the charge. Defendant's arguments that the trade confirmation

17

statements contain no false information and that they did not cause the OBWC to part with money or property go to the strength of the government's evidence and proof, but not to the sufficiency of the Superseding Indictment with respect to Counts 2, 3 and 4.

The Superseding Indictment's charge of conspiracy is related to the wire and mail fraud charges. The charges of aiding and abetting hinge on its proof of the other offenses charged. Because Defendant's motion to dismiss the other charges of the Superseding Indictment has been denied, the motion must also fail with respect to the conspiracy and aiding and abetting charges.

### VI.   Conclusion

The Court finds Defendant's arguments in support of his motion to dismiss are without merit. In support of his motion, the Defendant has essentially asked the Court to examine documents and information outside of the Superseding Indictment and to evaluate the sufficiency of the government's evidence. The sufficiency of the government's evidence is question of fact for the jury. The Superseding Indictment tracks the statutory language, contains the elements of the crimes charged and provides the Defendant with sufficient information to understand the facts and circumstances surrounding the charges against him. Accordingly, Defendant's Amended Motion to Dismiss is denied.

IT IS SO ORDERED.

  September 27, 2007                                          *S/ David D. Dowd, Jr.*
Date                                                                    David D. Dowd, Jr.
                                                                              U.S. District Judge

18